Good morning everyone. All right, Judge Montalvo sat with us earlier this week, but for the benefit of council who weren't here, Judge Miller and I are pleased to welcome back Judge Montalvo from the Western District of Texas who's sitting with us this week for a few days as a visiting judge. So thank you, Judge, for coming. I'll be calling the cases in the order that they're listed on the calendar. The first two, Perez Cabrera v. Garland and Wendt v. Kitakazi have been submitted on the briefs and record. And the last case has been submitted as well, Liberty Corporate Capital v. Stockdale Capital Partners. So the first case on calendar for argument today is Iversen v. Pedro. May it please the court. Steve Sadie for Terry Iversen and I hope to reserve four minutes for rebuttal. All right, I'll try to help you out, but keep your eye on the clock as well. Condemning a person to die in prison is unlike any other sentence to prison. Under the clearly established federal law of Solemn and Graham, life without parole for public indecency is grossly disproportionate in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Persons sentenced to die in prison are suffering a unique and severe and irrevocable form of punishment. Its harshness is just under the death penalty and more than any other parolable sentence. On the other hand, the gravity of the offense conduct in this case, public indecency, is on the least spectrum of seriousness. It does not involve physical contact. It does not involve violent touching. It certainly doesn't involve death. It doesn't involve loss of property, destruction of property. Every state considers recidivist public public indecency as not worthy of this type of presumptive life imprisonment and as the conduct itself, which is the key to consider, the gravity of the actual conduct is considered a misdemeanor or petty offense by every jurisdiction. The offense that triggered the life without parole sentence was his third felony public indecency. That is, previous to that, in 2000, he had served three years in prison for public indecency felony charge that had been enhanced because he was a repeat sexual offender. Yes. And before that, in the same year, in other words, in a span of two of six weeks, he picked up two felony public indecency. He is a repeat offender on public indecency and under the Oregon statute, one of the predicates for the three strikes was repeated public indecency and the predicate was public indecency. But what both Graham and Solem tell us is that the beginning of the analysis under clearly established Federal law is the gravity of the offense. I am not saying that we do not consider the seriousness of the recidivism as part of judging the sentence, but in making the analysis of gravity versus severity of the punishment, that's the critical part. You are here on a 2254 and the standard of review under the AEDPA is whether the state court applied properly understood Federal law, which, in this case, let me just put it to you this way. How is this different from Harberling versus Michigan where someone with over 650 grams of cocaine and no felonies, no prior felonies in his record, got a life without parole? And the Supreme Court said that's okay. They looked to the gravity of the felony offense. They said that 32,000 doses to 60,000 doses of cocaine that could have been put in the community created a danger and a risk of violence that was sufficient that that felony offense. This is misdemeanor conduct. It's fundamentally different. And since Harberling, we have the clarifying Graham opinion, which tells us look to the initial conduct compared against the drastic penalty of life without parole. And if we look at Graham and Solem, we have two analytical paths that were contrary, that the state decision was contrary to and an unreasonable application of. Well, so, I mean, maybe you could we have a lot of cases from the Supreme Court bearing on disproportionality. What is the rule that you take to be clearly established by those cases that should be applied here? Yes. I think there's two rules because we have in Graham the clear division that there is a categorical approach and an individual assessment. I think both of those paths lead to reversal in this case. The first one looks to a sentencing practice. In evaluating the second, the sentencing practice, the first step that Justice Kennedy tells us in the, in Graham is to make a national assessment. Is there any other jurisdiction that is doing this practice of presumptive life without parole for recidivist public indecency? The answer, no. We provided that information to the court. The court has I think ten states don't even consider recidivism as a, as turning a public indecency into a felony. Some have five or ten year max. Some have a 15 year max. Very few theoretically allow a greater penalty. No one says presumptive life without parole. We are looking at that first step of Graham. They've told us here's the clearly established federal law and it says take this step. This step tells us gross disproportion. Right. But I mean, I think you're right. I mean the governing principle is gross disproportionality. But in Lockyer, the court identified that as, you know, the principle established in their cases and said that the precise contours of it are unclear and applicable only in exceedingly rare and extreme cases. So the Supreme Court doesn't seem to have treated it as a principle that establishes very much for EDPA purposes. I think that for the categorical approach, they were not dealing with categorical in Andrade. This is from Graham and Graham is clearly established. Yeah, but Graham, I mean, Graham was about juveniles. Right. I mean, that's sort of, I don't know how you can sort of extract that from Graham and. At page 561, they say the first step when there's a categorical examination of a practice and the sentencing practice here is recidivist public indecency people getting life without parole. That's the sentencing practice. They say the first step in the sentencing practice is to look at the national consensus. There is no national consensus. The national consensus is this is way out of line. And in those circumstances, we've established the gross proportionality. The State doesn't even argue that there is any national other thing than the national consensus. And even if we were looking at the individual, the solemn approach, where you look at the individualized case, what we have firmly established there, because look at the concurring opinion of Chief Justice Roberts in Graham, because he goes on, he says, hey, majority says we're going categorical. I get to the same result on an individual assessment, even though it was repeat violence, repeat with guns and knives and injury. And what he says there is the way that you have to start is by looking at the gravity of the offense and the severity of the punishment. And in solemn, footnote 21, again, they're saying unmistakably you start with the gravity of the offense. Yes, you consider recidivism. You look at that in the context of severity. And if you look at even the cases that were being decided by this Court before Graham, Ramirez and Gonzalez, in those cases with parolable offenses, the Court was looking at the gravity of the conduct and the severity of the punishment. The severity of the punishment is the key to this case that takes it out of all of those precedent about parolable offenses, because the Supreme Court has repeatedly and unmistakably told us life without parole is different. It is just about death penalty, because you're dying in a box. And that's just more than should happen to somebody who exposes themselves to somebody with no contact, an adult, and should be punished. We're not saying that they don't get punished. We don't say that they don't get enhanced punishments for recidivism. Aren't you attacking the structure of the Oracle statute? On a 3254, you can't get into attacking the structure of the statute. And what you're suggesting, isn't it that the Graham v. Florida analysis dealing with strictly juvenile offenders should be projected to adult offenders? You know, the Supreme Court there says too that juveniles are different. If the punishment is grossly disproportionate, either categorically or as individually applied, that's what the federal court does. The federal enforces the federal constitution in a state system. If the state system is creating a punishment that is unconstitutionally disproportionate, as it is here, then in this context with repeat offenders for public indecency, we know that this court would uphold. To extend your analysis, then, Graham overruled Harmelin v. Michigan? Not at all. In other words, Harmelin v. Michigan is no longer good law? No, it's clarified after that. Because remember, Harmelin was a plurality opinion with a three-judge concurring opinion. Graham synthesized the cases. We now have Graham and Solem, because Graham repeated and enforced Solem and basically provided us with the guidance that we need that what's the clearly established federal law that says that this sentence to life without parole for public indecency is grossly disproportionate? And with the Court's permission, I'll reserve my time for rebuttal. All right. Thank you. May it please the Court, I'm Rolf Mohn from the Oregon Department of Justice. And I'd like to point out that today and in Petitioner's reply brief, he's making two distinct arguments. He's arguing that there's a categorical rule methodology that the state courts should have used, akin to the methodology used in Graham, that the state courts should have used when assessing Petitioner's Eighth Amendment challenge. He's also arguing that the state courts incorrectly applied the gross disproportionality analysis that the Supreme Court has applied in a lot of other cases. And the problem with making both those pitches at this point is that in Petitioner's opening brief, he only made a gross disproportionality argument. The categorical rule based argument appears for the first time in his reply brief at pages 5 and 11. That's the first time that he has suggested that the state courts erred by not applying a categorical rule methodology. And he also did not make a categorical rule based argument either in the district court or in the state courts when challenging his sentence. Now, page 27 of Petitioner's opening brief, he does state that Graham supports a categorical rule that would foreclose life without parole for misdemeanor offense conduct. But he does not assert in the opening brief that the state courts erred by not applying a categorical rule methodology. And the statement I just quoted from page 27 of the opening brief is actually a statement made to support the gross disproportionality argument that is made in the opening brief. And, in fact, the statement at page 27 falls under heading B in Petitioner's argument, which argues that a petitioner's sentence constitutes grossly disproportionate punishment. So the only issue presented in the opening brief and presented in the state courts was whether the state courts in sentencing, in assessing whether a petitioner's sentence was grossly disproportionate, committed an error. And so the question here is whether the state courts in assessing gross disproportionality violated clearly established federal law as announced by Supreme Court holdings. And the answer to that question is no. And, first of all, neither Graham nor Solem can entitle petitioner to relief in this case. First of all, Graham, even if we were applying the categorical rule methodology that the Supreme Court used in Graham, Graham actually suggests that a true-life sentence for recidivists can be constitutional outside a juvenile offender context. At 560 U.S., at 72, the Graham court wrote that recidivism is a serious risk to public safety and, quote, incapacitation may be a legitimate penological goal sufficient to justify life without parole in other contexts, unquote. In other words, if we're not dealing with a juvenile offender, then incapacitating someone with a true-life sentence can be constitutional. And the rest of Graham makes it clear that the Graham holding really is limited to the juvenile context. In Graham, the court emphasized that a true-life or a life-without-parole sentence for juveniles is inappropriate, first because juvenile offenders' culpability can be considered as a lesser form of culpability than adult offenders because a juvenile's crime might reflect something, might reflect nothing more than transient immaturity, in the court's words. The court emphasized that a true-life sentence for a juvenile is more severe than a true-life sentence imposed for an adult because a true-life sentence for a juvenile means that the juvenile will spend a greater percentage of their overall life in prison compared to an adult offender who receives that same sentence, and the Supreme Court emphasized that when you're dealing with juveniles, incapacitation is not a legitimate penological goal that justifies a true-life sentence because, given a juvenile's  goals, courts can't be sure that a juvenile will forever be a danger to the community. And all of those factors are missing in this case, and Petitioner's case is quite different with respect to each of those considerations because Petitioner was, in fact, an adult when he committed each of his felony sex crimes. He was an adult when he committed his two felony sex offenses in 1989, which were the third-degree rape and the second-degree sodomy. He was an adult when he committed his two felony public indecency offenses in 2000. He was an adult in 2016 when he committed his final felony public indecency crime. And between 1989 and 2016, he was sentenced to prison on at least four separate occasions. He was also sentenced to jail for a year on another occasion, and each time he served his sentence and then was released, it wasn't all that long before he committed a new crime. And on some of those occasions, the new crime was, in fact, a felony sex offense. And so this is a case in which Petitioner's history, spanning from 1989 to 2016, really does show that he was a continuing danger to society. I think what's really tough about this case, counsel, is the without-possibility-of-parole part. You know, we've heard a number of cases this week, including very serious criminal cases where individuals committing very serious crimes, such as child molestation. There are murderers who are serving less time. They get determinate sentences or life with the possibility of parole. How often is this life without possibility of parole invoked in the state, just to give us a sense of how this works?  In his briefing, I don't have any basis to dispute those numbers. I don't remember them off the top of my head. But for individuals like this who have had opportunities to reform and haven't done so, I'm assuming is it discretionary when the state prosecutor triggers the application of an LWOP sentence? Well, it's certainly discretionary in terms of the ultimate sentencing decision, because ORS 137-719 does provide for the possibility of a downward departure. So trial courts are free to consider all of the circumstances involving a particular offender in trying to determine if there's some reason not to impose the presumptive true-life sentence. And I think what's important to recognize here is that petitioners' particular criminal history seems to be at the extreme end of recidivism behavior, because not only has he committed these... It is troubling. There's no question about it. But I think in looking at this case, the fact that it's an LWOP is pretty severe. I think there are serious policy implications here in terms of processor discretion and the like, but that's really beyond the purview of what this Court's being asked to do in this particular case. And I think it's also important to recognize that the Supreme Court in Lockyer v. Andrade approved what was essentially akin to a true-life sentence, because in Lockyer v. Andrade, the defendant was given two consecutive 25-year-to-life sentences under a recidivist statute. His most recent offenses were stealing two videotapes valued at roughly $150. He had three prior burglary convictions. The dissent in Lockyer pointed out that because of the consecutive nature of these sentences and the 25-year minimums, the defendant was not going to be eligible for parole for 50 years, and he was 38 when he was sentenced. So it looked like the earliest he could be released, even with the possibility of parole, would have been when he was 88 years old, if he was fortunate to live that long. And so that really was a sentence that was, for practical purposes, akin to life without parole. Nonetheless... Right, but that happens all the time in life with the possibility of parole. There's no guarantee that you're going to be granted parole, even if you're eligible for it. So there's always the idea that, well, it's a life without possibility of parole, but you may never make it that far. But here, at the outset, it's an LWOP sentence. And so that's quite severe. Sure, and certainly the courts need to take that into account when assessing the severity of the penalty and comparing the severity to the gravity of the offense. But what's also true is that in assessing the gravity of the offense that's being sentenced, the courts the state courts properly considered not just the most recent felony sex offense, the 2016 public indecency, but considered the other convictions, the constitutive felony sex crimes that helped trigger the recidivist sentence. And in Ewing, the Supreme Court made it clear that when you're dealing with a recidivist sentence triggered by multiple convictions over time, the gravity of the offense includes an assessment of all of the crimes that brought an offender into the ambit of the recidivist sentencing statute. Right, if we consider just the offense alone, it would be grossly disproportionate, wouldn't it? I think that's probably true, but that's not how the analysis and the methodology works under Supreme Court holdings. And in Ewing, the court said, for example, that the gravity of Ewing's offense under California's three strikes law was not merely the shoplifting of three golf clubs, which was his most recent offense, but the fact that he did so, quote, after previously having been convicted of at least two violent or serious felonies, unquote. And it wrote that in weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but his long history of felony recidivism. And that's what the State courts appropriately did in this case. They considered not just the 2016 public indecency felony crime that Petitioner committed, but it considered the prior felony sex crimes that he committed, and it considered the fact that those crimes, unlike the crimes in Solemn, for example, all involve crimes in which there was an identifiable human victim, someone victimized by Petitioner's particular conduct. In 2016, his public indecency crime involved sitting behind a woman on a light rail train and masturbating. While she was aware of that, the victim stated that she was frozen in fear as a result. In 2000, one of Petitioner's public indecency crimes was masturbating in view of a 17-year-old girl who was traveling alone on a light rail train. His other 2000 public indecency conviction was for masturbating next to a 16- and 17-year-old girl on a light rail train. His 1989 third-degree rape crime was for having sex with a 15-year-old who told authorities that Petitioner wouldn't take no for an answer. And Petitioner's 1989 second-degree sodomy conviction resulted because he had forced himself on a 12-year-old who had refused to give him oral sex. So each of those felony sex crimes were properly considered by the state courts when assessing the gravity of the offense that ultimately resulted in the true-life sentence at issue. And there's nothing in existing Supreme Court holdings that suggests that comparison of the gravity of Petitioner's particular felony sex crimes, comparing the gravity to the severity of the true-life sentence, compels a conclusion that the gross disproportionality standard was satisfied here. And I also want to point out that although Petitioner relies on solemn, which seems to require that a court conduct intra- and interjurisdictional comparisons as part of the Eighth Amendment analysis, solemn is no longer considered good law in that respect. Graham, when it described the gross disproportionality standard, noted that it is only in the rare case in which the threshold comparison of gravity of the offense with severity of a sentence leads to an inference of gross disproportionality that a court should then compare the sentence at issue to sentences for offenders in the same case. And so it's only if Supreme Court holdings compelled the State courts to conclude that there was this inference of gross disproportionality that the State courts would have needed to engage in comparisons of the sentence to sentences received by other offenders elsewhere. But nothing in Supreme Court case law compelled the State courts to infer that that gross disproportionality threshold standard had been satisfied. So in the end, there really is no Supreme Court holding that would have compelled the State courts to do anything differently than what they did. And I'd also like to point out that in a case that Petitioner cites at page 13 of his opening brief, Norris v. Morgan, a decision out of this circuit, this Court had described the solemn factors as short-lived and held that the State court's failure to address the solemn factors wouldn't provide a basis for habeas relief. And in Norris v. Morgan, this Court concluded that a true-life sentence under Washington's two-strikes law in which an offender had committed two different child molestation crimes was not grossly disproportionate. So that further supports the conclusion that the State courts in Petitioner's case acted consistently with the imposing sentence and did not violate any clearly established federal law as announced by Supreme Court holdings. Unless this Court has other questions for me, I'll simply ask it to affirm. Thank you, Counsel. Several points. First, the idea that we have not raised Graham's categorical approach to gross disproportionality cannot survive just looking at our brief. We have a whole section where the only thing we're relying on is Graham and its approach to certain practices. Page 24, we talk about the practices that are described in Graham and how to do that analysis. It's only in the concurring opinion of Chief Justice Roberts that he talks about the individual. So we've raised both very clearly. Both are clearly within the concept of gross disproportionality and violation of the Eighth Amendment. Also, take a look at Morris. Morris cites to the concurring opinion by Chief Justice Roberts, citing to Solemn. Solemn is still controlling law, and it's been reinforced, not undermined, by Graham. The question about how many people are suffering life without parole for public indecency, in our brief we said five. I think one person has completed their sentence by dying in prison. So I think it's now four, and it is a matter that it's only if it's charged that this can happen so that there may be all kinds of differences between prosecutorial discretion being exercised. Right now, in Oregon prisons, there are people who are serving prison sentences for murder, about 543 of them. Everyone has killed somebody and is doing a life sentence. And those 543 people have killed somebody, are doing life sentences, and have parole available. When you're looking at comparisons to life without parole and what a difference it makes, we look to what the Supreme Court has said. The Supreme Court has unmistakably and repeatedly said life without parole is different. We apply a more demanding standard because it is so close to death, it is in effect a death sentence, a sentence to die in prison. And when you do that for showing his genitals in public, that is grossly disproportionate. And this court should find that there is a contrary to and clearly unreasonable application of the very strong Supreme Court authority on how the Eighth Amendment relates to sentences without, to life without parole, especially when the gravity of the offense, as in this case, is on the far spectrum of not involving death, not involving serious injury, not involving sexual violence, not involving loss of property, not loss of destruction of property. It's grossly disproportionate. This is one of those very few cases I talk to people on the street, other lawyers, and they think I'm kidding when I say something. You can't be serious. It's incredulity is the frequent response when I tell them I'm about to argue in the Ninth Circuit about life without parole for public indecency. It's grossly disproportionate. Thank you. Thank you very much, counsel, both sides for your argument today. The matter is submitted.
judges: NGUYEN, MILLER, Montalvo